Dear ye, dear ye, this Honorable Appellate Court for the 2nd Judicial District is now in session. The Honorable Dr. Ruth B. McLaren presiding. Please be seated. Your Honor, the first case in the document this morning is 2-22-0. Clause 2-8, Brian Mapp v. Appellate, the Advocate Condell Medical Center and Midtown Health, LLC, defendants' appellees. Arguing on behalf of the Appellate, Mr. Alexi Kaplan. Arguing on behalf of the Appellee, Mr. Joseph Hummels. Thank you. Mr. Kaplan? Sir? You may proceed. Thank you. Good morning. My name is Alex Kaplan. For purpose of introduction, this lovely young woman to my left is my paralegal. She's here because of, one, car problems and, two, moral support, which is much appreciated. This is my first time before... In that order? No, never in that order. This is my first time before this Court or any Appellate Court, so I apologize in advance if there are any missteps on my part. For purposes of judicial economy, I believe that we have sufficiently briefed all the issues before this Court, so I'd like to either reserve my time for rebuttal but ultimately open the door for this panel for questioning in regards to the issues that we presented. You have different or sundry hurdles to get over. It's not only whether or not workman's comp preempts. It's also whether or not there was notice or constructive notice. Yes, sir. I'm not sure the implications of whether or not he was going to the car to get his gym bag or whether he was going to his car to go home or what. Relative to the lights, did they ever figure out what was causing the light to go out? No, they never did. As a matter of fact, one of the things that we brought up is that the defendant and its agents never had any procedure as to actually check the lights, never had any preemptive policies to go in and check the grounds or the depressions in the grounds. So it's clear they didn't have actual notice. You can't deny that. No, I mean, there's no smoking gun. There's no one that said, oh, we knew that the lights were out or we knew that there was a pothole there. But that bleeds over into the constructive notice issue because they have a duty as owners of land to actually check whether or not there are potholes or at least to make some kind of inspection. And even though we asked for records the last time that Cross Electric was out to check the lights or the last time that the company that filled in the potholes was out, those records were never provided. So we have no idea when was the last time they even bothered checking or how long those potholes were there. Why weren't they provided? I don't know. Did you file a motion to compel? No, we did not. We asked them on the record during the deposition. They promised to provide them. Those were not provided. Did you ever get an expert to give you any information on how long it takes for a pothole to get that size or what the weather conditions may be with respect to creating a pothole that size? No, we did not. Okay. If the light went out... Pardon me. I'll start again. It's my understanding that the light was on when your client was walking in the parking lot and then it went out and then because of the distraction, he fell into or stepped into the pothole. So we can, I think, reasonably conclude that the light was on until it wasn't. And so if it went off, the issue isn't necessarily... Correct me if I'm wrong. The fact that it went out, it's why it went out. I think that, if I'm not mistaken, Brian testified that when he was walking, the light started flickering and it was the flickering that drew his attention when he looked over his left shoulder and at that point, it's when he fell into the pothole. The argument that we were making in terms of whether or not there's a fact and dispute is that these light bulbs were never changed, they were never tested, and light bulbs, like any hardware, deteriorates. Light bulbs and light sensors, especially when they're exposed to weather, eventually fail. And so when we were deposing the defendants, one of the questions that we asked is, when was the last time it was changed? When was the last light bulb? When was the last time the sensor was checked? And we never got an answer. And so the premise of our argument is that all of this creates questions of fact for the jury as to whether or not defendant breached their duty. And these are factual issues which would ultimately preclude summary judgment. The standard to determine whether or not a defendant is entitled to summary judgment is whether or not the plaintiff can arguably present a case sufficient to sustain a judgment in plaintiff's favor. And the more factors or conditions that you have that aren't clearly resolved one way or the other or are undisputed makes the proof more difficult. And it seems in this case that you have several factual issues that it's not clear how they protonderate. A flickering light personally to me means that there's oxidation in the bulb and it's going to sooner or later, it's no longer going to close the circuit and it's not going to burn. But that's what flickering means to me because a sensor normally is either on or off which means that the light should go off once and not come back on or flicker. So there's some inferences here. But the kicker is how relative to both notice of the pothole and the light and the defect in the light which you can't assume that there's a defect simply because the light goes out. Would you agree to that? I think that reasonable people could come to different conclusions that if you've got a light on a sensor that they had with an advocate which goes on when it's dark and it goes off when it's light, if it's dark, the light should presumably be on or off if it's not working. But it shouldn't be flickering. No, you had indicated that you felt that they had notice of this light because somebody told them that there was a light that was out. Was it the light that was where your client felt? That's what we can't figure out from the defendant. And again, this raises the question of whether this is for a jury to decide. There is an indication from Mr. Ali, one of the defendant's agents, that he was notified that a light was out. A light. A light. When asked which light, he couldn't tell us. When asked when he was told that this light was out before or after Brian's fall, he wasn't able to tell us. Now, how about the Zemir case that your opponent relies heavily upon this case? How do you distinguish that? Well, first of all, Zemir was a trip and fall over, from what I understand, was a two-inch deviation in the sidewalk. And it was also against the city. Here we have a private entity. Is that any different? Well, it's different because I believe that the burden may have been different. But even if the burden is the same, this is a... It's still notice. It's still notice. This is a, from what was described by the defendants, a large pothole. In the pictures that the defendants provided, and admittedly the pictures aren't clear in terms of reference as to where this particular pothole is, but if you look at the horse barricade that's put over these potholes, it's bigger than the horse barricade. So we rely very heavily on the Nguyen case, N-G-U-Y-E-N, I believe it's pronounced Nguyen, that general personal experience indicates that potholes don't get that big instantaneously, that there's got to be some type of compromise in the asphalt or whatever substance that is. And as cars drive over it, it slowly gets bigger and bigger and bigger and bigger. One of the things that Brian testified to in his deposition is that after he fell, he was able to get up, and he noticed that he had pebbles on his hands from the fall. Again, the pebbles had to be there for some degree of time, and it's not just a crack in the asphalt. It's not just a two-inch deviation like in Zamer. So we brought up the distinction with Zamer, because the defendant relies on it so heavily, is that this is not a small two-inch deviation. This is a large pothole by the defendant's own admission. And the issue of notice and duty is that the defendant is basically saying if they close their eyes to whatever potential problems there could be, they should be free of liability. And our argument is that if they performed their duty and did reasonable inspections on the property, they would have been able to identify these large potholes. It was only a day after Brian fell that one of the center club's employees sent out an e-mail that said, hey, there is this large pothole. You can't miss it. And that's just common sense, just like in Wynn. We rely on Wynn a lot with the rust on the basin where the plaintiff fell. Rust is not an instantaneous issue, and neither are potholes like this. Now... Were there cones put out indicating where a pothole was? If I'm not mistaken, the cones were put out after Brian fell. Afterwards. Yes, sir. But the little difference in the Nune case versus this case is that was a deteriorated concrete basin as well as I think it was a metal lid on it. And it hadn't existed for a period of time. But in this case, for constructive notice, you have to show that it existed for a sufficient period of time. Do you feel that you came up that early? Yes, we really do, because if we think about the basin in the Wynn case, the court rule that common sense tells you that rust doesn't happen instantaneously. It happens over a period of time. Sure, sure. And the same principle applies to potholes that are of the size that were pictured and were testified to. Potholes don't just happen. They start with, as Mr. Alley testified, they start with compromising the cement itself. And then as time goes on and there's more traffic that goes over this compromised area, the cement fails. And they get bigger and bigger, and hence all of the pebbles that Brian felt when he fell. So I think that if we apply Wynn's analysis of common sense, not necessarily a technical issue, potholes exist over a sufficient amount of time. And some of the pictures evidence that there are potholes in different parts of this location as well. And we're not talking about those potholes. I understand the issue of focusing on the pothole where Brian fell. But the fact of the matter is those potholes existed, and the defendant has a duty to inspect the property. The defendant couldn't tell us when was the last time he inspected the property or any of his agents, when was the last time he walked the property or any of the agents, when was the last time they inspected the lights, or when was the last time they inspected the sensors. They weren't able to give us receipts from the last time that Cross Electric came out to inspect the lights. So there's a series of questions here that we believe should be in front of a jury to be decided in terms of negligence. When it comes to actual constructive notice in terms of time and the temporal issue, we believe that the size and nature of the potholes that were testified to and that were evidenced in the pictures reflect that. And the fact that Mr. Ali testified that potholes are not created instantaneously. Well, his testimony was over time throughout the season. That's correct. That's the quote that you've repeated. He also said it could occur in a short period of time, or whatever's happening is below the surface and then the surface collapses, something to that effect. So what's the counter? I mean, you don't have any opinion testimony, but other than there are pebbles indicating maybe it was older and the size, right? Is that basically you're asking us to recognize that the size and the existence of pebbles indicates a sufficient period of time? Coupled with Mr. Ali's testimony, it would be sufficient to establish the temporal requirement for constructive notice. Does Mr. Ali's testimony indicate that, I mean, he compares it to highways, obviously, and I'm not sure that analogy fits, but he did say that it can become visible fairly quickly, even if other things are going on below the surface. So what's your counter to that testimony? Potholes, when they, again, commonsensically, when they form, do not form that big and that size instantaneously. It's usually a small depression that gets- That's who? Again, just like with wind, just our experience in real life and with Mr. Ali's testimony himself, there's first a depression over time. As cars roll over, the depression gets bigger and bigger. I've been here for a sufficiently long time to have listened to arguments and read briefs relating to how a pothole or essentially the destruction of the integrity of a cabin or asphalt or blacktop or, in some instances, concrete- Expert, but go ahead. No, but the thing is, is that it's supposed to be based, for the most part, on the effects of water protruding into the infrastructure and the degradation caused by water. And the size of the depression and the size of the accumulation of water will either create a large pothole or a small pothole, depending on how much water is above what ultimately becomes a pothole. And so what I'm suggesting to you is that some potholes can be very large because they are in a very large depressed area where, because of poor drainage or whatever, that there is a large amount of water above what turns into a very wide or big, width-wise and length-wise, pothole. So I'm, so to speak, using my common sense and everyday experience in life. And when you say what you say about potholes don't happen to be big, they start out small. The hole may start out small, but depending on how much water is above the area that is going to be destroyed by the water will determine the size of the pothole and how long it will take to happen. And the longer a big pot of water is sitting over asphalt, the bigger the hole once it starts breaking up. So do you have any other common sense or everyday experience in life that suggests that what I'm telling you doesn't apply in this situation? No, I don't. But if I may address that, it would seem that Your Honor's analysis would indicate that there is an issue of material fact that would be in dispute taking Your Honor's analysis as to the formation of a pothole. Okay. Your time is up. Can I ask one other question? Sure. You have learned, I think it was from Advocate, that Rose Paving was the company that serviced the parking lot? My understanding is that Advocate would engage Rose Paving and possibly other contractors that would service the parking lot if a, I believe they called it a cold snapper. Jill, maybe you can pipe in on this one. I forget the technical term. Did you depose Rose Paving? No, we did not. Rose Paving was never disclosed to us except at that deposition. So after the deposition, did you ever depose them or subpoena any records from them? No, we did not. I have no further questions. Thank you. You'll have an opportunity to make rebuttals. Thank you. Mr. Korner, you may proceed. Thank you, Your Honor. Joseph Korner on behalf of Defendant Epa Lee, Advocate Condell Medical Center. May it please the Court. We ask this Court to affirm the Circuit Court of Lake County in their judgment in Advocate's favor, finding there is no issue of fact as to constructive or actual notice. It appears Clarence is conceding actual notice, and so we will stick to the constructive notice argument here. Your Honor hit the nail on the head when you brought up the role that weather plays with potholes. Mr. Alley, who is an engineer, has a bachelor's and master's degree in civil engineering, has presided over the Advocate Condell campus for many, many years, and is very familiar with the formation and response to potholes. Explain that water gets into the surface underneath the asphalt, it freezes naturally, which expands the asphalt, and then it melts naturally, which contracts the asphalt. This weakens the cavity underneath the roadway. Over time, it will either naturally cave in in certain spots due to the amount of water that is present or has been present over time, or a car or vehicle driving over it will break up the surface. That process is the last step in the process where the pothole finally manifests itself. That process, Mr. Alley explained, is a quick process that can happen overnight or within a matter of days. Counsel, I have a slight issue with that just because that may apply on Lakeshore Drive, as he said, in March after freeze-thaw cycles with 10,000 cars a day on it. This is a parking lot, not a lot of traffic, certainly not high speed, and it's November, right? So you haven't had thaw cycles. And you also have the testimony from Mr. Alley that these things occur over time throughout the seasons, which indicates an extended period of time. This was, what, three weeks? Well, no, I don't think there's any testimony as to the amount of time. It's simply an estimate from Mr. Alley that it could have happened in a shorter period of time, right? Yes, Your Honor. There is no testimony that this particular pothole formed in three weeks. I think there's something about a picture within three weeks. I got that three weeks stuck in my brain. Yes, Your Honor. He stated that this could have formed in as short as three weeks or as quickly as overnight. That's how quickly they formed. He didn't have an opinion in this case on how quickly it formed, which is the same thing as the Zemir case where the city's civil engineer opined that that pothole, I'm sorry, that defect, the deviation, could have formed in as short as three days. However, in that case, he said it could have been up to a year, and the point was the plaintiff had an absence of evidence of how long this defect existed. Combining that with the opinion testimony of the engineer who said it could have been as short as three days meant the plaintiff could never prove constructive notice, and the same thing is present here. The plaintiff, Mr. Neff, had no idea how long this had existed. He had actually walked to the parking lot that morning and didn't see it. Combined with Mr. Ali's testimony that this could have formed in as quickly as overnight precludes any argument by plaintiff in front of a jury that there was sufficient amount of time for this to be discovered. And to Your Honor's question about the difference between Lakeshore Drive and this parking lot, this is a large hospital campus. It's heavily trafficked with a lot of cars. Mr. Neff parked there daily. There are certainly hundreds of parking spots and hundreds of cars traversing the area daily. So I don't think there's a meaningful difference between Lakeshore Drive and the Advocate Condell parking lot. Is it in the southwest of the Condell parking lot or of the hospital parking lot? I mean, of the health club parking lot or the hospital parking lot? So Advocate owns the entire campus, including the health club. It was the south, if I have my directions right, east. They said southwest. I believe it's the southeast portion of the entire campus. It's the northwest part of this particular parking lot, which is part of the larger campus, if that makes sense. It is a little bit confusing. There is a... So if it's the southeast part, it's the farthest away from the medical facility. No, the main entrance to the hospital is actually quite close. Mr. Neff himself testified that it was... So then it would be the southwest part of the parking lot. It could be the southwest, Your Honor. I think it's the north end of the health club parking lot. Yeah. So, yeah, southwest of the hospital. Right. Was the spot against a sidewalk or was it one of the spots that was away from the sidewalk? It was against a sidewalk, Your Honor. I was going to actually start by trying to clarify where the location was. If you look on supplemental record, page E71 and 72, they provide the best photos. There is quite a bit of sort of confusion and back and forth about the actual location. Those are the only photos of the actual pothole that Mr. Neff fell in. It's directly adjacent to a sidewalk and inside a parking space. So the pothole was inside the parking space. It is, Your Honor. And he actually circled the particular hole on page E72 of the record with a red circle before his deposition to affirm what pothole he was referring to. The plaintiff, in this case, brought up two separate photos of different potholes. And to talk about the size and how large he believed they were, those were not the potholes Mr. Neff fell in. I asked Mr. Neff at his deposition whether those were the potholes that are pictured in pages E71 and 72 of the record. And he stated he doesn't know what those potholes were and he had never seen them before. Mr. Alley explained that he was alerted that there were potholes and he didn't know where they were. He went out and put cones in the two that he saw, which turned out were not the particular ones at issue. Just to circle back, though, so the location being up against the sidewalk, there's not through traffic going across this. This is simply cars that park on the spot. There's, other than to the extent that when there's no car park, there are certainly cars that probably go into the parking space, in and out of the parking space, drive over that part of the parking lot. Right. It's not in the center of the parking lot. Yeah, but again, to the point, it's not Lake Shore Drive. So, but the plaintiff's argument is that there's an element of common sense, common experience to the time that it takes for something to develop like this. This is, according to the accident report, a large pothole. Mr. Alley said you can't miss them. They're pretty big. And then there's the gravel or the pebbles on the plaintiff's hand when he falls. Why isn't it common knowledge, common experience? And doesn't that raise a question of fact? It does not, Your Honor. The Winn case that talks about common knowledge is specifically referring to the process of iron or steel rusting over time. They cite to the Baker case where that case had stated that it was common knowledge that steel or iron rusts, and it takes a substantial amount of time for that process to occur. I'm not so sure that my common knowledge includes how long it takes for rust to occur. But putting that aside, there is no case, there is no authority. Well, Winn was admitted to be 22 years. And that's another element. That's the key. Winn does not stand for the proposition that any time there is any sort of defect, that people should be allowed to use their common knowledge to say how long it takes. In that particular case, the rusting was supposedly common knowledge. And most importantly, there was the evidence of the time element. The homeowner had been told to check the lid and admitted that he had not checked it for 22 years. And so there was 22 years of time when that rust, that corrosion, that could have occurred. All right. So if the plaintiff had an engineer that came in and said that this type of pothole would take X period of time, what period of time would constitute enough to raise the inference under Restatement 343? Well, I don't think I've found any cases that suggest that anything under a year is a sufficient amount of time when we're talking about sidewalks, parkways, roadways, things of that nature. The Winn case and the Pittman case relied on by plaintiff both talk about cases that show a year or two years. In Pittman, it's six years. Certainly something to that effect. Sure, you could say that a landowner should discover it using reasonable care, but there is no expert testimony for the plaintiff's argument here. There is only the testimony of Mr. Ali saying this could have happened in a matter of days or as quick as overnight. And so it is the plaintiff's burden to produce some sort of evidence as to how long it took for this to form. If he had retained an expert in this case who disagreed with Mr. Ali and said, no, no, no, based on the size, based on the pebbles, I'm not sure what the pebbles, the significance of that is. Then you have a question of fact. Then you might have a question of fact, absolutely. But that is not the case here. There is no evidence. There is no testimony for the plaintiff for how long it existed. In fact, the only thing we have is the plaintiff's own concession that he did not see a pothole there that morning, that he parked in that parking lot regularly and had never seen a pothole in that spot. Was there any discovery request relative to the interval of inspection for potholes? There was a discovery request, and to be fair, I don't believe it's part of the appellate record.  There were discovery requests about inspections, and the response, which I think Mr. Ali alluded to in his deposition, was that the parking lot and the entire campus are routinely walked by his staff and the public safety facility group. Is this routine yearly or monthly or biweekly or daily or what? He said between the departments it was daily or weekly. Daily or weekly? Correct. So at the maximum, it's one week. At the maximum, it was one week. And there was no documentation. They don't keep documentation. It's a large campus. I understand the counsel brought up documentation to Justice Shestad's point. There was no motion to compel. How many cones were put out after the accident? There were two cones put out in separate potholes, not the one Mr. Neff fell in. So after the accident and within less than a week, assuming that the last inspection was up to a week prior to this day and it happened on the seventh day, there was only two cones and two potholes plus the one that the plaintiff fell in, which did or didn't have a cone? There is no testimony that a cone was put in the pothole that the plaintiff fell in. What Mr. Ali testified to was that that particular pothole is very shallow. It's less than two inches deep, whereas those larger potholes were big enough to warrant putting a barrier or a thing in. So after the fact, it was actually exactly one week after the fall, I believe, Mr. Ali put those cones up in those two other potholes. And, of course, it bears me mentioning that those other potholes are relevant for the purpose of notice. They're, you know, as the Zunier case references and the Brzezinski case within there. What do you mean by purposes of notice? Are you referring to notification to invitees or people on the property? Are you talking about notice for purposes of the landlord doing something relative to reasonably maintaining his property? The latter, purposes of notice to the landowner doing something relative to his property. As the Zunier court stated, issues of the surrounding area are irrelevant to the issue of constructive notice. You have to identify notice of the specific defect, that pothole that Mr. Neff fell in, not the fact that there may have been potholes elsewhere in the parking lot. That is irrelevant for constructive notice as far as the landowner is concerned. So ultimately what we're left with is expert opinion testimony that this could have happened within days, overnight. No evidence from plaintiff as to how long it existed. And just as in Zunier, that required summary judgment in defendant's favor. It's one thing to talk about no testimony from the plaintiff. The source of facts is from all the evidence that all the parties are aware of. So when you narrow it down and say there was no evidence presented by the plaintiff, to me it would be much better for your argument to suggest that there was no evidence presented either by the plaintiff or the defendants that indicated that there was any evidence of notice, constructive or otherwise. Do you understand what I'm pointing out or not? I do and I probably shouldn't have worded it that way. Well, it's one-sided. It suggests that it's the plaintiff's burden. And that isn't the burden of the plaintiff. The burden of the plaintiff is to take all the evidence that is available, not just from him but from the entire record, to establish his probable sustenance or sustaining of a judgment in his favor. That's very wrong. And the reason I said the plaintiff specifically was because the Zunier court highlighted that the plaintiff and the plaintiff's companion who was walking with him did not know how long the defect existed. And the same is true here. But we can certainly broaden it. I see I'm out of time. If I may briefly finish. Any other questions? No, I have no questions. Okay. You can close if you'd like. Sure. All I was going to say with that last thought was there is nothing in the record from any evidence, any witness, as to how long this existed. And that is, in fact, the deficiency in the plaintiff's case that warranted summary judgment. And for all the reasons we stated, as well as those in the brief, we ask that the circuit court's judgment be affirmed. Thank you. Thank you. Mr. Kaplan, you may proceed with the vote. Thank you. Very briefly, two quick points. The first is the, it goes back to your Honor's point about taking all of the evidence that is available, not just what the plaintiff saw and felt, but also what the defendants testified to. Mr. Ali testified that these potholes could happen overnight. They could happen over the course of weeks. This Court, in prior cases, has ruled that even 45 minutes is sufficient for constructive notice. That was a fact. Well, that depends on what it is. In that case, it was water that was on the floor next to the entrance in a bar. Yes. And the plaintiff does not have the burden of establishing how long a certain defect existed. The plaintiff has the burden of establishing that it's, that the defect has existed for a sufficient amount of time. For constructive notice. For constructive notice. on constructive notice to show that it was there for a certain period of time, that the landowner should have known about it. That's correct. That's correct. And that amount of time is not a strict numerical construct. It depends on the situation, depends on the testimony of all of the parties in a particular case. So sometimes in the case of the bar with the water, it could be simply 45 minutes. Mr. Ali testified that these depressions and potholes can occur within three days, within, you know, a few weeks. If it occurred within three days, two or three days, and it is in the north part of the parking lot in the, I think the southwest corner, and presumably, arguably, you don't get that much traffic in that area, how does three days assist you in constructive notice? Actually, Your Honor, we would suggest that there is a healthy amount of traffic in that area because this is the center club parking lot. So this is the parking lot that caters to those folks that are going to work out at the health club, which is the center club, and it also caters to advocates' own employees when there's no parking close to the actual hospital. They go and park at the center club. So between all of advocates' employees that supposedly should have known or presumably walk the area that should have noticed the defects, and if they coordinate with all of the health care, the center club's employees, that three days is sufficient to establish some, at least temporal notice for purposes of, or temporal time for purposes of constructive notice. For the sake of argument, if the parking lot is so busy, this particular pothole is in a parking spot, so in the middle of the spot. So if cars are parked on it, you're not going to see it. Unless you walk the parking lot with sufficient amount of time. With no cars. With no car in that particular area. And I would add to that in terms of notice, constructive notice, if you add the element of the flickering light with this, I believe that the plaintiff was, through all of the testimony, the plaintiff was established that at the very least, at the very least, there's an issue of material fact that should go to the jury when it comes to constructive notice. There's, we don't have to try the case. We don't have to prove the case. We have to establish that at the very least, there is a question of fact here that would preclude summary judgment. Thank you. Thank you. We'll take a short recess. We have other cases on the call. All rise.